## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| LANELL GREENBERG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 20-cv-1434-JES-JEH |
| | ) | |
| MCLEAN COUNTY UNIT 5 SCHOOL | ) | |
| DISTRICT, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>ORDER AND OPINION</u>

This matter is now before the Court on Defendant's Motion (Doc. 5) to Dismiss and Plaintiff's Response (Doc. 7) thereto. For the reasons set forth below, Defendant's Motion (Doc. 5) is granted in part and denied in part.

### BACKGROUND

The following facts are taken from Plaintiff's Complaint, which the Court accepts as true for the purposes of a motion to dismiss. *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 639 (7th Cir. 2015). Plaintiff, Lanell Greenberg, began her employment with McLean County Unit 5 School District during the 2003-2004 school year. In 2008, Greenberg worked as a school administration manager. In 2012, Greenberg accepted a position as Administrative Assistant to the Superintendent of Unit 5. She also acted as the Clerk of the Board of Education for the Unit 5 School Board. Plaintiff remained employed with Unit 5 until her resignation on October 26, 2018. Doc. 1 at 1-3.

In July of 2018, Greenberg left her position as Administrative Assistant to the Superintendent and Clerk of the Board of Education to start a new position as Administrative Assistant to the Associate Principal of Unit 5. Prior to her transfer, Plaintiff alleges she was

1

exposed to repeated comments and gestures of a sexually explicit nature committed by the Executive Director of Human Resources, James Harden. Plaintiff further alleges she was exposed to retaliatory conduct by the Superintendent, in concert with members of the Unit 5 School Board during times when Plaintiff was working and attempting to perform her job duties for Unit 5. Specifically, Plaintiff claims she was exposed to harassment and retaliation after she opposed the unlawful employment practices of senior management personnel of Unit 5 and reported the unlawful conduct.

The harassing and retaliatory conduct included: (a) while walking past a large conference table, James Harden asked Greenberg to have the conference table delivered to his home so he could "make love on it to his wife" and proceeded to act out "making love" on the table by getting on the table in front of Plaintiff; (b) Harden referred to Greenberg and other women in the Unit 5 office by his wife's name and asked Plaintiff if sharing information about local food restaurants would get him "laid"; (c) on multiple occasions while entering Plaintiff's office, Harden would take candy from Greenberg's candy dish and then, while eating a Hershey's Chocolate Kiss, make gestures with his mouth and comments of a sexually explicit nature offensive to Greenberg and other females employees of Unit 5; (d) Harden would make unspecified derogatory and sexually suggestive comments and gestures toward Plaintiff during working hours; and (e) the Superintendent, after being advised of the above by Plaintiff and other Unit 5 employees, imposed different workplace rules on Plaintiff unlike those imposed on other employees of Unit 5 who had not made complaints of sexual harassment and hostile work environment. Doc. 1 at 3-4.

Plaintiff reported Harden's conduct and comments to those with supervisory authority over him, including Barry Hitchins, Board President of the School Board of Unit 5. Plaintiff

alleges the comments, gestures, and actions of Harden toward Plaintiff were unwanted, intentional, harassing, and discriminatory. Plaintiff further alleges that, as a consequence of Harden's actions and the failure of Unit 5 to address the concerns and complaints raised by Plaintiff, she was forced to request a transfer from her position as Administrative Assistant to the Superintendent of Unit 5 and Clerk of the Board of Education. According to Plaintiff, she went to another position within Unit 5 in hopes of eliminating her exposure to the ongoing discrimination, harassment, and retaliation. However, despite her transfer, her complaints were not addressed and the workplace harassment and retaliation continued, particularly when Plaintiff was communicating with the Office of the Superintendent or members of the school board. Doc. 1 at 4-5.

Plaintiff alleges she was forced to resign her position with Unit 5 on October 26, 2018 because of the work environment at Unit 5, the failure of Unit 5 to take action to stop the discriminatory actions in the workplace, and due to retaliation occurring as a consequence of Plaintiff's opposition to the unlawful conduct of senior management employees of Unit 5 and her reports of sexual harassment against Harden. Doc. 1 at 5.

Count 1 of Plaintiff's Complaint asserts a claim for gender discrimination and sexual harassment, in violation of Title VII of the Civil Rights Act of 1964. Specifically, Plaintiff alleges she was meeting her employer's legitimate business expectations, actions of senior Unit 5 management personnel created a hostile work environment and interfered with her performance, she was forced to resign as a result, and Unit 5 senior management personnel knew about and showed a reckless disregard as to whether Unit 5's conduct violated the protections afforded Plaintiff under Title VII of the Civil Rights Act of 1964. Doc. 1 at 6-7.

Count 2 sets forth a claim for retaliation under Title VII of the Civil Rights Act of 1964. Therein, Plaintiff alleges that in response to her reports of sexual harassment, Plaintiff was subjected to verbal harassment and a hostile work environment by individuals including unidentified senior management personnel as well as the Superintendent and members of the Unit 5 School board. Plaintiff alleges these individuals undermined and interfered with her work performance in unspecified ways as a result of Plaintiff's reports and complaints. Plaintiff alleges the conduct of the unidentified senior management personnel was outrageous and done with malice and a conscious disregard for Plaintiff's rights. Finally, Plaintiff alleges the conduct was intentional and Unit 5 authorized, condoned and/or ratified the unlawful conduct. Doc. 1 at 8.

### LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) challenges whether a complaint sufficiently states a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). The Court accepts well-pleaded allegations in a complaint as true and draws all permissible inferences in favor of the plaintiff. *See Bible*, 799 F.3d at 639. To survive a motion to dismiss, the complaint must describe the claim in sufficient detail to put defendants on notice as to the nature of the claim and its bases, and it must plausibly suggest that the plaintiff has a right to relief. *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007). A complaint need not allege specific facts, but it may not rest entirely on conclusory statements or empty recitations of the elements of the cause of action. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

### DISCUSSION

Defendant has filed a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6). Doc. 5. First, Defendant argues Plaintiff fails to establish a hostile work environment or sexual

4

harassment claim under Title VII. *Id*. at 3. As part of this argument, Defendant asserts Plaintiff fails to demonstrate the alleged harassment was based on gender. *Id*. at 4. Separately, Defendant argues the conduct alleged by Plaintiff is not sufficiently severe or pervasive to establish a hostile work environment. *Id*. at 5. Second, Defendant argues Plaintiff fails to allege facts sufficient to support a constructive discharge claim. *Id*. at 7. Third, Defendant asserts Plaintiff fails to establish a retaliation claim under Title VII. *Id*. at 9.

**1. Hostile Work Environment/Sexual Harassment**

In order to establish a prima facie case of hostile environment sexual harassment under Title VII, Plaintiff is required to show that: "(1) she was subjected to unwelcome sexual harassment in the form of sexual advances, requests for sexual favors or other verbal or physical conduct of a sexual nature; (2) the harassment was based on sex; (3) the sexual harassment had the effect of unreasonably interfering with the plaintiff's work performance in creating an intimidating, hostile or offensive working environment that affected seriously the psychological well-being of the plaintiff; and (4) there is a basis for employer liability." *Valentine v. City of Chicago*, 452 F.3d 670, 677 (7th Cir. 2006), *as amended* (July 6, 2006).

*A. Harassment Based on Gender*

Defendant first argues Plaintiff has failed to allege the harassment was based on gender. Doc. 5 at 4. Specifically, Defendant claims "there is no indication that Harden's alleged conduct was directed at Greenberg by virtue of being female." *Id*. In support, Defendant notes that the Seventh Circuit has recognized that "occasional vulgar banter, tinged with sexual innuendo of coarse or boorish workers" generally does not create a hostile work environment that a reasonable person would find intolerable. Doc. 5 at 4; *Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 463 (7th Cir. 2002). In her Response, Plaintiff argues the allegations in her Complaint,

viewed in the light most favorable to her, give Defendant sufficient notice of her claim that

Harden acted in a particular derogatory manner towards her by his comments and gestures of a

sexual nature due to Plaintiff being female. Doc. 7 at 4. Further, Plaintiff points out the

allegations regarding Harden were commonly directed towards female employees and not male

employees. Given the sexual nature of the alleged statements by Harden, together with the fact

that statements were made to female employees and not male employees, the Court finds

Plaintiff has sufficiently demonstrated that Harden's conduct and statements were based on her

gender. To the extent Defendant argues the comments were isolated or minor, such an argument

is better directed at the next element of a hostile work environment claim—whether the alleged

conduct was sufficiently severe or pervasive.

     *B. Severe or Pervasive Requirement*

     Next, Defendant argues the conduct alleged by Plaintiff is not sufficiently severe or

pervasive to establish a hostile work environment. Doc. 5 at 5. Specifically, Defendant argues

"[t]his is not the case of sexual assault or other unwanted physical contact, uninvited solicitations

for sex, intimidation or threats, pornography, or even obscene language or gestures." Doc. 5 at 6.

Further, Defendant notes there are no allegations Harden inappropriately touched Plaintiff,

solicited sex from her, or intimidated or threatened her. While acknowledging that Harden's

comments and conduct were inappropriate in an employment context, Defendant argues the

alleged conduct was neither sufficiently severe nor pervasive to amount to a hostile work

environment under applicable Seventh Circuit precedent. *Id*. at 6-7 (citing *Hostetler v. Quality

Dining, Inc.*, 218 F.3d 798, 809 (7th Cir. 2000); *Smith v. Sheahan*, 189 F.3d 529, 532 (7th Cir.

1999)).

A hostile work environment must be "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim did in fact perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88 (1998). "For workplace conduct to constitute a hostile work environment actionable under Title VII, the harassment 'must be sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive environment.' " *Tutman v. WBBM-TV, Inc./CBS, Inc.*, 209 F.3d 1044, 1048–49 (7th Cir. 2000) (citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986)). "In determining whether contested conduct actually creates an objectively hostile work environment, a number of factors may be considered including 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.' " *Hilt-Dyson*, 282 F.3d at 463 (quoting *Faragher*, 524 U.S. at 787–88)). Further, "the alleged discriminatory conduct cannot be considered in a vacuum; rather, an employee's claim must be evaluated in light of the social context in which events occurred." *Id*.

Whether complained of conduct rises to the level of severe or pervasive depends on the totality of the circumstances. *Nischan v. Stratosphere Quality, LLC*, No. 16-3464, 2017 WL 3275149, at *5 (7th Cir. Aug. 2, 2017). Here, the allegedly harassing conduct included: (a) while walking past a large conference table, James Harden asked Greenberg to have the conference table delivered to his home so he could "make love on it to his wife" and proceeded to act out "making love" on the table by getting on the table in front of Plaintiff; (b) Harden referred to Greenberg and other women in the Unit 5 office by his wife's name and asked Plaintiff if sharing information about local food restaurants would get him "laid"; (c) on multiple occasions while entering Plaintiff's office, Harden would take candy from Greenberg's candy dish and then,

while eating a Hershey's Chocolate Kiss, make gestures with his mouth and comments of a

sexually explicit nature offensive to Greenberg and other females employees of Unit 5; (d)

Harden would make unspecified derogatory and sexually suggestive comments and gestures

toward Plaintiff during working hours; and (e) the Superintendent, after being advised of the

above by Plaintiff and other Unit 5 employees, imposed different workplace rules on Plaintiff

unlike those imposed on other employees of Unit 5 who had not made complaints of sexual

harassment and hostile work environment. Doc. 1 at 3-4. Although the conduct at issue did not

involve improper touching, the allegations in Plaintiff's Complaint, when viewed in the light

most favorable to her, are sufficient to meet the severe and/or pervasive requirement at the

motion to dismiss stage and provide sufficient notice to Defendant as to what alleged conduct is

at issue. *Cf. Adusumilli v. City of Chicago*, 164 F.3d 353, 361-62 (7th Cir. 1998) (noting that

unwanted touching was the "most serious misconduct" in the case). Further, each of the cases

discussed by Defendant addressed the severe and/or pervasive requirement in the context of

summary judgment. *See, e.g., Hostetler*, 218 F.3d at 807 ("But the acts described in these cases

lie at the outer boundaries of conduct that can be labeled nonsevere at the summary judgment

stage.").

## 2. Constructive Discharge Claim

Next, Defendant argues Plaintiff's constructive discharge claim should be dismissed.

Doc. 5 at 7-8. Noting the standard for a constructive discharge claim is even higher than the

standard for a hostile work environment claim, Defendant argues Plaintiff cannot meet this

standard because she does not allege Harden continued to harass her following her transfer to the

position of Administrative Assistant to the Associate Principal of Unit 5.

In her Complaint, Plaintiff alleges that after her transfer "her complaints were not addressed and the workplace harassment and retaliation continued; in particular when Greenberg was communicating with the Office of the Superintendent or members of the School Board." Doc. 1 at 4-5. Further, Plaintiff "was forced to resign her position with Unit 5 on October 26, 2018 because of: i) the work environment at Unit 5, the failure of Unit 5 to take action to stop the discriminatory actions in the workplace; and due to retaliation occurring as a consequence of Greenberg's opposition to the unlawful conduct of senior management employees of Unit 5 and her reports of sexual harassment against James Harden." *Id.* at 5. These conclusory allegations are so devoid of fact they cannot possibly put Defendant on notice as to what individuals and what conduct created the circumstances giving rise to her constructive discharge. The allegations, even viewed in the light most favorable to Plaintiff, fall well short of showing "working conditions so intolerable that a reasonable person would have felt compelled to resign." *Pennsylvania State Police v. Suders*, 542 U.S. 129, 146–47 (2004). Finally, Plaintiff's reliance on *Hostetler* in her Response is misplaced as *Hostetler* did not analyze a constructive discharge claim. 218 F.3d 789. Accordingly, Plaintiff's constructive discharge claim is dismissed.

**3. Retaliation**

Third, Defendant argues Plaintiff has failed to establish a retaliation claim under Title VII. Doc. 5 at 9. On this issue, both parties agree the relevant frameworks for assessing this claim are the indirect and direct (burden-shifting) methods of proof. *But see Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016) (clarifying that the correct legal standard "is simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action"). *See also David v. Bd. of Trustees of Cmty. Coll. Dist. No. 508*, 846 F.3d

216, 225 (7th Cir. 2017) (noting the *McDonnell Douglass* burden-shifting approach survived

*Ortiz*).

Under the indirect method Plaintiff advances here,

[A]n employee must first present evidence sufficient to establish a prima facie case
that her employer retaliated against her in violation of Title VII. More precisely, an
employee must demonstrate that: (1) she engaged in statutorily protected activity;
(2) she performed her job according to her employer's legitimate expectations; (3)
despite meeting her employer's legitimate expectations, she suffered a materially
adverse employment action; and (4) she was treated less favorably than similarly
situated employees who did not engage in statutorily protected activity. S*ee Stone
v. City of Indianapolis Pub. Utils. Div.*, No. 01–3210, 2002 WL 234239, at *1 (7th
Cir. Feb.19, 2002). Absent direct evidence of retaliation, failure to satisfy any
element of the prima facie case proves fatal to the employee's retaliation claim.
Once the employee succeeds in proving her prima facie case, the employer must
offer a legitimate, noninvidious reason for the adverse employment action. *See
Stone*, 2002 WL 234239, at *3; *Aviles v. Cornell Forge Co.*, 241 F.3d 589, 592 (7th
Cir. 2001). Once the employer has done so, the burden of production shifts back to
the plaintiff to demonstrate the pretextual nature of the proffered reason. *See Stone*,
2002 WL 234239, at *3; *Aviles*, 241 F.3d at 592. At this point, if the employee fails
to establish pretext, her retaliation claim cannot survive summary judgment.

*Hilt-Dyson v. City of Chicago,* 282 F.3d 456, 465 (7th Cir. 2002).

The jist of Defendant's argument is that Plaintiff failed to allege a material adverse

employment action against her. Doc. 5 at 9. Specifically, Defendant asserts Plaintiff's vague

allegations that she was retaliated against fail to identify what form the retaliation took beyond

conclusory, boilerplate allegations. In her Response, Plaintiff states

Greenberg has alleged sufficient facts to put Unit 5 on notice of her claim of
retaliation under Title VII of the Civil Rights Act. Greenberg alleged that as a
consequence of her report of the actions of James Harden to the Superintendent,
she was retaliated against by Harden, the Superintendent and other members of the
Board of Education. Greenberg alleged in her Complaint that the retaliatory actions
of Unit 5 supervisory and executive personnel interfered with her ability to perform
her job; and further alleged that she was treated differently than other similarly
situated employees who had not engaged in protected activity. Finally, Greenberg
alleged that despite the fact that she was meeting Unit 5's legitimate business
expectations, she was forced to put in for a transfer to another position with Unit 5
due to the retaliatory acts of her supervisors and executives of Unit 5.

Doc. 7 at 9. However, Plaintiff's Response provides further support for Defendant's position. A reader of her Complaint would be left wondering: What retaliatory actions? By whom? How did the conduct interfere with her ability to do her job? Because these allegations are insufficient to put Defendant on notice of the claims against it, Plaintiff's claim for retaliation is likewise dismissed.

Finally, Plaintiff requests leave to file an amended complaint in the event any of her claims are dismissed. Doc. 7 at 10. This is Plaintiff's first request to amend her pleading, and the Court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Given that the defects identified above might be cured by an amended pleading, the Court grants Plaintiff leave to file an amended complaint consistent with this Order within 21 days, if she has a good-faith basis for doing so.

## CONCLUSION

For the reasons set forth above, Defendant's Motion (Doc. 5) to Dismiss is granted in part and denied in part. Plaintiff may file an amended complaint consistent with this Order within 21 days, if she has a good-faith basis for doing so.


Signed on this 20th day of January, 2022.

s/ James E. Shadid
James E. Shadid
United States District Judge

11